IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:04cr271

UNITED STATES OF AMERICA      )
        )
        vs.        )
        )        <u>ORDER</u>
TRACY HOWARD (1)      _____)
_____ )

**THIS MATTER** is before the Court upon motion of the defendant for a new trial (Doc. No. 293) and the government's response (Doc. No. 297).  For the reasons stated below, the Court finds that the defendant has failed to carry his burden under Fed. R. Crim. P. 33 and denies the motion.

## I.     INTRODUCTION

The defendant, along with several co-defendants, was indicted for offenses generally involving interstate and underage prostitution, money laundering, crack cocaine distribution, and firearms possession. (Doc. No. 88: Superseding Indictment).  On April 21, 2006, following a three-week trial, he was convicted of all sixteen counts in which he was charged, including every object of each alleged conspiracy. (Doc. No. 269: Jury Verdict).  The defendant has not yet been sentenced, but filed this motion after requesting two extensions.

The defendant raises three claims in support of his request for a new trial.  First, he asserts that the Court constructively amended the indictment by including references to South Carolina prostitution law in the jury instructions relating to Counts One through Twelve. (Doc. No. 293: Motion at  ¶¶ 3-9).  Second, the defendant claims that he was prejudiced when counsel for two co-defendants "raised the specter" that their clients had given information to law enforcement agents about the defendant's criminal activity. (Doc. No. 293: Motion at ¶¶ 10-15).

Finally, the defendant renews his objection to the Court's denial of his motion to suppress. (Doc. No. 293: Motion at ¶¶16-17).

II.     DISCUSSION

    A.     Constructive Amendment by Jury Instructions

When a district court through its jury instructions broadens the bases for conviction beyond those charged in the indictment, it constructively amends the indictment in violation of a defendant's Fifth Amendment rights. <u>United States v. Randall</u>, 171 F.3d 195, 203 (4th Cir. 1999). Such a fatal variance changes the elements of the offense charged and results in a conviction for a crime other than that detailed in the indictment. <u>Id.</u> Constructive amendment is per se error and must be corrected. <u>Id.</u>

    1.     Count One

Count One of the Superseding Indictment charged the defendant and others with conspiring to commit the following offenses against the United States:

    a.     to knowingly persuade, induce, entice and coerce individuals to travel in interstate commerce for the purpose of engaging in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, in violation of Title 18, United States Code, Section 2422;

    b.     to knowingly transport individuals, who were at that time under the age of 18 years, in interstate commerce from the State of North Carolina, to the State of South Carolina, with intent that such individuals engage in prostitution, in violation of Title 18, United States Code, Section 2423;

    c.     to travel in interstate commerce and use the mail and facilities in interstate commerce to distribute the proceeds of unlawful activity and promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of unlawful activity, said unlawful activity being prostitution offenses in violation of the laws of North Carolina, in violation of Title 18, United States Code Section 1952.

(Doc. No. 88: Superseding Indictment at 3).

Regarding the first object of the conspiracy, involving persuading, inducing, enticing, or coercing another to travel in interstate commerce to engage in prostitution, the Court instructed the jury as follows:

That the defendant or a co-conspirator knowingly persuaded, induced, enticed, or coerced an individual to travel in interstate commerce to engage in prostitution.

It is not necessary for the government to prove that the individual was actually persuaded or induced or enticed or coerced to engage in prostitution; but it is necessary for the government to prove that the defendant or a co-conspirator intended the individual to engage in prostitution and knowingly and willfully took some action that was a substantial step toward bringing about prostitution.

So, the government must prove that if the intended prostitution had occurred, the defendant or a co-conspirator could have been charged with a criminal offense under the laws of South Carolina.

(Doc. No. 301: Jury Charge TR at 58).[1]  The Court later defined prostitution according to the law of South Carolina. (Doc. No. 301: Jury Charge TR at 61).

The defendant argues that the Court's instruction expanded the indictment to make "any conduct which 'could have been charged [as] a criminal offense under the law of South Carolina' (brackets added), a violation of the indictment." (Doc. No. 293: Motion at ¶ 5).  Not only does the defendant misquote the instruction by substituting "as" for "with," but his argument isolates the quoted language from its context which relates to the singular offense of prostitution.  The challenged instruction correctly informed the jury that the defendant could be liable for conspiring to violate § 2422 even if the prostitution he intended did not actually occur, but would have been a state law violation if it had. United States v. Williams, 291 F.3d 1180, 1187 (9th Cir. 2002) (defendant's act of persuasion completes the offense).

---

[1]At the time of this Order, only this volume of the trial transcript has been filed. References to other volumes will be to rough versions, the page numbering of which may differ from subsequently filed final versions.

Although proof of actual prostitution would not be required to sustain his conviction, the defendant is mistaken in his assertion that there was no proof of actual prostitution in South Carolina during the conspiracy. (Doc. No. 293: Motion at ¶ 5). Hilari Levine testified that she went on calls to Tega Cay and Fort Mill, South Carolina, and that the defendant received half the money men paid her for sex. (Vol. III, Rough TR at 197-198). Crystal Chumley testified that she performed sex for money, that the defendant gave her condoms to use on calls, and that she went on calls to Fort Mill, South Carolina. (Vol. IV, Rough TR at 179-180, 194). Keisha Burris, who was fifteen years old when the defendant offered food, shelter, and clothes in exchange for her prostitution, testified that the defendant or his mother drove her to calls in North and South Carolina where she was required to have sex if requested. (Vol. IX, Rough TR at 90, 109-110).

The first object of the conspiracy alleged in Count One involved persuading another to travel in interstate commerce to engage in prostitution, without reference to the states at issue. The evidence presented at trial showed that the defendant and other co-conspirators directed women to travel from North Carolina to South Carolina to perform sex for money. The Court's instruction regarding South Carolina's prostitution law did not broaden the charged offense, but rather directed the jury to the law of the state where the defendant and co-conspirators intended for prostitution to take place. Therefore, the defendant was properly convicted of the indicted offense.

Regarding the second object of the conspiracy involving transporting a person under eighteen years of age in interstate commerce to engage in prostitution, the Court instructed the jury that the elements of this offense were:

> One, the defendant or a co-conspirator knowingly transported an individual from North Carolina to South Carolina;

Two, the defendant or a co-conspirator did so with the intent that the individual engage in prostitution that would have been a criminal offense under the law of South Carolina; and

Three, the individual was under the age of eighteen at the time.

It is not necessary for the government to prove that the individual was in fact less than eighteen years of age; but it is necessary for the government to prove that defendant believed such individual to be under that age. Also, it is not necessary for the government to prove that the individual was actually persuaded or induced or enticed or coerced to engage in prostitution; but it is necessary for the government to prove that the defendant intended the individual to engage in prostitution and knowingly and willfully took some action that was a substantial step toward bringing about or engaging in that prostitution.

(Doc. No. 301: Jury Charge TR at 59).

As detailed above, the proof showed that the defendant or co-conspirators directed at least one minor to travel from North Carolina to South Carolina to engage in prostitution. The indictment specified that North Carolina and South Carolina were the states involved in this object of the conspiracy. Therefore, the Court's instruction regarding South Carolina's prostitution law did not constructively amend the indictment and the defendant was properly convicted of the indicted offense.

Regarding the third object of the conspiracy involving traveling in interstate commerce or using mail or facilities in interstate commerce for the purpose of carrying on an unlawful activity, the Court instructed the jury that the elements were:

One, that the defendant or a co-conspirator traveled in interstate commerce on or about the time, and between the places, charged in the indictment; or the defendant or a co-conspirator used the mail or a facility in interstate commerce;

Two, that the defendant or a co-conspirator engaged in that travel, use of mail, or facility in interstate commerce with the specific intent to promote, manage, establish, or carry on an unlawful activity as hereafter defined; and

> Three, that the defendant or a co-conspirator thereafter knowingly and willfully committed an act to promote, manage, establish, or carry on such unlawful activity.
>
> While it must be proved that the defendant or a co-conspirator traveled in interstate commerce with the specific intent to promote, manage, establish, or carry on an unlawful activity, it need not be proved that such purpose was the only reason or motive prompting the defendant or a co-conspirator's travel or use.

(Doc. No. 301: Jury Charge TR at 60). The Court defined "unlawful activity" as including "prostitution which is a violation of the laws of North Carolina and South Carolina." (Doc. No. 301: Jury Charge TR at 61). The term "prostitution" was defined in North Carolina as including "the offering or receiving of the body for sexual intercourse for hire, and shall also be construed to include the offering or receiving of the body for indiscriminate sexual intercourse without hire." (Doc. No. 301: Jury Charge TR at 61). That term in South Carolina "means engaging or offering to engage in sexual activity with or for another in exchange for anything of value." (Doc. No. 301: Jury Charge TR at 61).

The defendant complains that the indictment specified the unlawful activity was prostitution in North Carolina, but the instruction allowed a conviction for prostitution in South Carolina. (Doc. No. 293: Motion at ¶ 9). As the definitions above show, conduct that would violate South Carolina's prostitution law would also violate North Carolina's prostitution law. Therefore, the Court's definition of "unlawful activity" did not expand the charge for which the defendant was indicted.[2] Additionally, the proof showed that money received by the defendant

---

[2]The Fourth Circuit has recognized that the designation of particular laws in the indictment serves "only as background identification of unlawful activities . . . necessary only to identify the type of 'unlawful activity' in which the defendant intended to engage." United States v. Pomponio, 511 F.2d 953, 957 (4th Cir. 1975) (internal citations and quotations omitted).

and co-conspirators from calls in both North and South Carolina, including payments by wire transfer, was used to provide shelter, food, clothes, and even awards for the prostitutes working in North Carolina. (Vol. II, Tabitha Johnson Rough TR at 57-59; Vol. IV, Chumley Rough TR at 179-186; Vol. IX, Burris Rough TR at 110-112, 119-120). Thus, the defendant was properly convicted of traveling in interstate commerce or using facilities in interstate commerce to promote unlawful activity as charged in the indictment.

        2.     Counts Two through Eleven

Counts Two through Eleven alleged substantive Travel Act violations, mirroring the third object of the conspiracy alleged in Count One, except they specified that wire transfer was the facility used in interstate commerce. (Doc. No. 88: Superseding Indictment at 4-5). Accordingly, the Court instructed the jury that the elements of those offenses were:

> One, that the defendant, or someone aided and abetted by the defendant, used a facility in interstate commerce, to wit: wire transfer;

> Two, that the defendant, or someone aided and abetted by the defendant, used a facility in interstate commerce with the specific intent to distribute the proceeds of or to otherwise promote, manage, establish, or carry on or to facilitate the promotion, management, establishment, or carrying on of any unlawful activity, including prostitution in violation of North Carolina law; and

> Three, that the defendant, or someone aided and abetted by the defendant, thereafter knowingly and willfully committed an act or attempted to commit an act to promote, manage, carry on or to facilitate the promotion, management, establishment, or carrying on of any unlawful activity, including prostitution in violation of North Carolina law.

(Doc. No. 301: Jury Charge TR at 66-67). The Court later referred the jury back to its previous definitions of "unlawful activity" and "prostitution" detailed above. (Doc. No. 301: Jury Charge TR at 68).

The defendant does not offer any additional argument specific to Counts Two through Eleven in support of his claim that the Court's instruction added "any number" and "all manner" of South Carolina offenses to the term "unlawful activity" as alleged in the indictment. (Doc. No. 293: Motion at ¶ 5). The instructions for Counts Two through Eleven focused the jury on prostitution in violation of North Carolina law as specified in the indictment. As shown above, the Court's previous definition of "unlawful activity" did not broaden the charged offenses because acts constituting prostitution under South Carolina law would necessarily constitute prostitution under North Carolina law. Therefore, the Court's instructions did not invite the jury to consider an offense other than prostitution and the defendant was properly convicted of the indicted offenses.

3.    Count Twelve

Count Twelve charged the defendant and others with conspiring to commit the following money laundering offenses against the United States:

(a)    knowing that the property involved in financial transactions represented the proceeds of some form of unlawful activity, to conduct and attempt to conduct such financial transactions which in fact involved the proceeds of specified unlawful activity, that is the use of interstate facilities to promote prostitution in violation of Title 18, United States Code, Section 1952 with the intent to promote the carrying on of specified unlawful activity in violation of Title 18, United States Code, Section 1956 (a)(1)(A)(i); and

(b)    knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, to conduct and attempt to conduct such a financial transaction which in fact involved the proceeds of specified unlawful activity, that is the use of interstate facilities to promote prostitution in violation of Title 18, United States Code, Section 1952, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Doc. No. 88: Superseding Indictment at 5-6).

The Court instructed the jury that the elements of that charge were:

> One, that two or more persons in some way or manner came to a mutual understanding to try to accomplish a common and unlawful plan to violate 18 United States Code, Section 1956 as charged in the indictment;

> Two, that the defendant, knowing the unlawful purpose of the plan, willfully joined in it;

> Three, that the defendant or a co-conspirator knowingly conducted or attempted to conduct a financial transaction as hereinafter defined;

> Four, that the defendant knew that the funds or property involved in the financial transaction represented the proceeds of some form of unlawful activity;

> Five, that the funds or property involved in the financial transaction did, in fact, represent the proceeds of specified unlawful activity, in this case the proceeds of the use of interstate facilities to promote prostitution in violation of North Carolina law; and

> Six, that the defendant or a co-conspirator engaged in the financial transaction with the intent to promote the carrying on of such specified unlawful activity; or

> That the defendant or a co-conspirator engaged in the financial transaction knowing that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or the control of the proceeds of such specified unlawful activity.

(Doc. No. 301: Jury Charge TR at 71-72).

The objects of the conspiracy alleged in Count Twelve involved using and disguising proceeds sent through wire transfer for prostitution without reference to the states at issue. The evidence presented at trial showed that the money sent through wire transfer was, in part, for prostitution in North Carolina. (Vol. II, Johnson Rough TR at 53-43, 74-76; Vol. IV, Chumley Rough TR at 184-185, 194). Thus, the Court's instruction defining "specified unlawful activity" in relation to proceeds from the promotion of prostitution in violation of North Carolina law did

not broaden the charged offense, but rather focused the jury on the law of the applicable state, and the defendant was properly convicted of the indicted offenses.

B.      References by Co-Counsel

During the trial, the Court prohibited the introduction of co-defendant David Howard's out-of-court statements to law enforcement agents pursuant to <u>Bruton v. United States</u>, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968), <u>Crawford v. Washington</u>, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), and Fed. R. Evid. 801(d) and 403.[3] (Vol. IX, Rough TR at 3-8). The Court made a similar ruling regarding out-of-court statements by co-defendant Nicholas Ragin. (Vol. X, Rough TR at 34).   The defendant claims he is entitled to a new trial because on two occasions counsel for David Howard and Nicholas Ragin suggested through questions that their clients implicated Tracy Howard in statements made to law enforcement agents. (Doc. No. 293: Motion at ¶¶ 11, 12, 14).

"A new trial may be granted to a defendant if required in the interest of justice, Fed. R. Crim. P. 33, and only when the evidence weighs heavily against the verdict." <u>United States v. Cannon</u>, No. 94-5176, 70 F.3d 113, 1995 WL 686343, at *2 (4th Cir. Nov. 20, 1995) (unpublished) (quoting <u>United States v. Arrington</u>, 757 F.2d 1484, 1486 (4th Cir. 1985) (internal quotations omitted)).   Thus, the essence of the inquiry is whether it is highly probable that the inadmissible comment substantially swayed or affected the jury's verdict. <u>Id.</u> at *3 (quoting

---

[3]The defendant's assertion that the Court barred evidence of David Howard's status as an informant is incorrect. (Doc. No. 293: Motion at ¶ 10).  The Court allowed evidence showing David Howard provided information to police, but excluded David Howard's actual statements implicating Tracy Howard if offered by himself or through law enforcement witnesses. (Vol. IX, Court Rough TR at 4).  David Howard took the stand in his own defense.  However, neither the government nor the defendant Tracy Howard cross-examined him.

United States v. Ince, 21 F.3d 576, 583 (4th Cir. 1994)). The Court is to consider the following factors in making this assessment: (1) the centrality of the issue affected by the error; (2) the steps taken to mitigate the effects of the error; and (3) the closeness of the case. Id.

Here, the defendant complains about two questions asked by co-counsel in the course of a three-week trial during which approximately forty-seven witnesses testified. The first question was asked by counsel for David Howard when examining a police officer. He asked, "Well, do you also in fact remember that at the time that you were attempting to use [David Howard] as an informant against Tracy Howard?" (Vol. IX, Peter Adolph Rough TR at 28). The government and the defendant objected before the officer answered the question. The Court provided the following curative instruction, to which the defendant did not object:

> Members of the jury, I will at a later time in this trial instruct you, I may have instructed you already, I think I did already, that a lawyer's questions are not evidence and you're not to consider a lawyer's questions as evidence. I have sustained an objection to the lawyer's question and I'm instructing you at this time not to consider anything in the lawyer's question in term of your finding the facts in this case.

(Vol. IX, Rough TR at 29-30). The next day, the second challenged question was asked by counsel for Nicholas Ragin when examining a federal agent about his client's out-of-court statement. He asked, "And that's not what you stated earlier. Is it? Wasn't your exact words on direct, quote, I associated with Tracy in an illegal way - -." (Vol. X, Nikita Mackey Rough TR at 56). The government objected before the agent answered the incomplete question and the Court immediately gave the following curative instruction, to which the defendant did not object:

> Members of the jury, I informed you at the beginning of the trial that a lawyer's questions are not evidence in a case unless adopted by the witness. And I informed you at another part of the trial that if an objection is sustained, that you are to - - if the objection is sustained you're not to consider the question. And if a

witness answers a question, I instructed you to disregard it and you are to disregard it and I am instructing you at this point to disregard the question - - the last question of Mr. Mackey.

(Vol X, Rough TR at 56). The defendant moved for a mistrial after each of these questions were asked. (Vol. IX, Andy Culler Rough TR at 29; Vol X, Culler Rough TR at 57).

Considering the factors detailed above, the Court finds that the alleged error did not affect a central issue in the case against the defendant. The first question was focused on the officer's intention to use David Howard as an informant and did not reveal the substance, if any, of what he knew about the defendant Tracy Howard's criminal involvement. Although the second question suggested the defendant's involvement in something illegal, it did not detail its nature. These slight and ambiguous references had no bearing on the central issues of the case, which involved prostitution, money laundering, drug distribution, and firearms possession.

Second, the steps taken by the Court immediately following each question mitigated the effects of the alleged error. The Court instructed the jury to disregard the questions of the lawyers and not treat them as evidence. Generally, any prejudice can be obviated by a cautionary or limiting instruction, "particularly if the danger of prejudice is slight in view of the overwhelming evidence of guilt." Cannon, at *3 (quoting United States v. Mark, 943 F.2d 444, 449 (4th Cir.1991) (internal quotations omitted)). Although the defendant now complains that the curative instructions focused the jury on the questions, he made no objection at the time the instructions were given. Juries are presumed to follow a court's instructions, United States v. Love, 134 F.3d 595, 603 (4th Cir. 1998), and the defendant has offered no evidence that the jury ignored the Court's curative instructions in this case.

12

Third, the evidence of the defendant's guilt was overwhelming. Numerous individuals who committed acts of prostitution and distribution of drugs at the direction of the defendant testified at trial and were subject to cross-examination. Comparing their properly admitted and credible testimony with the two isolated and non-specific questions of counsel suggesting that their clients had also implicated the defendant, the Court finds that it is highly improbable that the challenged questions substantially swayed or affected the jury's verdict. Therefore, any error caused by the lawyers' questions was harmless and does not warrant a new trial.

C.      Denial of Motion to Suppress

Finally, the defendant renews his request to suppress evidence pursuant to Georgia v. Randolph, 547 U.S. ----,126 S. Ct. 1515, 164 L. Ed. 2d 208 (2006). (Doc. No. 293: Motion at ¶¶ 16-17). The Court previously considered the defendant's motion in light of that decision and found that the evidence was admissible. (Doc. No. 277: Order). The defendant has not provided any new authority to contradict that ruling. Therefore, the interest of justice does not require a new trial.

**IT IS, THEREFORE, ORDERED** that the defendant's motion is DENIED.

The Clerk is directed to certify copies of this order to the defendant, counsel for the defendant, and to the United States Attorney.

Signed: September 18, 2006

Robert J. Conrad, Jr.
Chief United States District Judge

13